UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                                          Case No. 2:17-cr-8
                                                                        HON.  PAUL L. MALONEY
JOHN RAMON HAUK, JR.,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Defendant John Ramon Hauk, Jr. is charged with two counts of being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 921(a), 922(g)(1), 924(a)(2).[1]  The matter before the undersigned is Defendant's motion to suppress all evidence obtained as a result of a vehicle impoundment and inventory search.  (ECF No. 25.)  The Government responded (ECF No. 35), and Defendant replied (ECF No. 40).  On July 20, 2017, the undersigned held an evidentiary hearing and heard testimony from Defendant, Defendant's girlfriend—Kaycie Offutt, and Michigan State Police Motor Carrier Officer Jared Wells.  For the reasons stated below, the undersigned recommends that Defendant's motion to suppress be denied.

On November 10, 2016, Tracy Patrick Tungate offered Defendant $500 to tow a car, which Tungate claimed to have recently bought, from Marquette, Michigan, to Ironwood, Michigan.  Defendant agreed and borrowed his girlfriend's truck (the "truck") to tow the car (the "car").  At approximately 7:00 PM, Officer Wells stopped the truck towing the car on US-41

---

[1] In Count I, Defendant is charged with being a felon in possession of a .40 caliber pistol and six rounds of ammunition. In Count II, Defendant is charged with being a felon in possession of 100 rounds of .40 caliber ammunition.

because the lights were not working properly.[2]  The truck pulled over to the side of the highway and was roughly two feet away from the rumble strip.  At the time of the stop, Defendant was driving and there were two other passengers in the truck—Tungate in the front passenger seat and Lacey Elliason in the back seat.  Officer Wells requested identification from the three individuals inside.  Defendant initially stated that he did not have his license with him, but his license apparently fell out of the glove box when he was looking for the truck's registration.  Defendant also informed Officer Wells that his license may have been revoked.  Elliason did not have her driver's license, but she was able to provide Officer Wells with a credit card containing her name and her birthdate.  Tungate also provided Officer Wells with some form of identification.  Based on this information, Officer Wells returned to his police vehicle and ran a search on the individuals.  The search revealed that Defendant and Tungate had revoked licenses; however, Elliason had a valid driver's license.  Shortly thereafter, a sheriff deputy arrived at the scene to help assist Officer Wells.

After a short conversation, Officer Wells and the deputy returned to the truck.  Officer Wells asked Defendant to step out of the truck, while the deputy watched the passengers in the truck.  Officer Wells took Defendant back to the police vehicle and patted him down.  Defendant told Officer Wells that he only recently started driving the truck because Tungate became tired.  Defendant stated that the truck was owned by his girlfriend.  He said he would not take responsibility for anything in the truck because it was not his truck.  He also stated: "I didn't bring nothing in that vehicle; they didn't bring nothing in that vehicle." [3]  When Officer Wells

---

[2] The brake lights on the car were not working property and violated Mich. Comp. Laws §§ 257.686, 257.688, 257.692, and 257.698a.  In addition, the light on the top of the truck violated Mich. Comp. Laws § 257.698(5).

[3] During the hearing, the parties disputed which vehicle Defendant was referring when he made certain statements.  For example, Defendant contends that when he said he did not bring anything in the vehicle he was referring to the car.  The Government contends that Defendant was referring to the truck.  Based on the video, the undersigned finds that Defendant was referring to the truck.

asked Defendant if he could take a look in the truck, Defendant responded that he could not consent to a search because it was not his truck. Officer Wells informed Defendant that he could still consent, but Defendant reiterated that it was not his truck. Defendant then called his girlfriend on speaker phone and she also refused to consent to a search. Officer Wells subsequently arrested Defendant for driving without a valid license.

After placing Defendant in the police vehicle, Officer Wells returned to the truck to talk with Elliason and Tungate. Officer Wells asked Tungate and Elliason if they had any paperwork on the car that was being towed. Neither individual provided Officer Wells with any paperwork. Officer Wells then asked whether there were any drugs in either the truck or the car and whether they would consent to a search of the car. Elliason and Tungate stated that there were no drugs in the car and refused to consent to a search. The conversation with Elliason and Tungate lasted only a few minutes.

Shortly thereafter, Officer Wells and the deputy had a conversation. In explaining the situation to the deputy, Officer Wells stated:

> Now, the question I'm going to ask you is, [Elliason] is a valid driver, [Tungate] is not. If I get a wrecker out here to tow this, is that going to bring up some shit with Marquette courts, because she was valid to drive, and I decided to get it towed anyway, do you think? . . . I want to get in that vehicle. Something's fishy.

The deputy then asked if he meant an inventory search, and Officer Wells confirmed: "I want to inventory search that." The deputy told Officer Wells that he could impound and conduct an inventory search because the driver was arrested. Officer Wells replied, "Fantastic, that's what I thought."

Officer Wells then informed Defendant that the truck and the car were going to be impounded and towed because Tungate did not have a valid license and Elliason appeared too


tired. Defendant offered to call a tow truck after he was arrested, but Officer Wells insisted on calling. As a result of the inventory search of the truck, Officer Wells found marijuana shake on the passenger seat; a .40 caliber pistol with six rounds of ammunition in the center console[4]; and a lockbox in the backseat of the truck, which contained 20 grams of methamphetamine. In addition, marijuana and a box of ammunition were later recovered in the car.[5]

At the hearing, Officer Wells testified that there were three reasons he chose to impound the vehicles. First, Officer Wells testified that Elliason was not capable of taking custody of the truck and the car. He stated that Elliason appeared fatigued and lethargic during the traffic stop. Although he failed to conduct a sobriety test on Elliason, Officer Wells believed that she was under the influence of alcohol or drugs. He also stated that while he referred to Elliason as a "valid" driver during the traffic stop, he meant that she had a valid driver's license and it would have been illegal for Elliason to operate the truck because she did not have her driver's license in her possession. *See* Mich. Comp Laws § 257.31. Next, Officer Wells believed that the truck and the car presented a public hazard and needed to be removed from the side of the road as quickly as possible. The truck and the car were parked only a few feet from a busy two-lane highway and it was dark. Officer Wells knew that if he requested a tow truck, his request would become the top priority because he was a police officer. In addition, Officer Wells noted that Defendant was

---

[4] The parties dispute whether the center console was locked when Officer Wells conducted an inventory search. However, Defendant challenges only Officer Wells's decision to impound the truck and car; therefore, whether the center console is locked has little significance. In addition, Officer Wells discovered the marijuana shake prior to opening the center console.

[5] The circumstances surrounding the recovery of the box of ammunition are unclear. According to the criminal complaint, the box of ammunition was seized from the car pursuant to a federal search warrant. Apparently, the box of ammunition remained in the car after a state officer conducted an inventory search and executed a separate state search warrant. Defendant did not specifically address the recovery of the ammunition from the car. However, Defendant's motion seeks "to suppress all evidence in this case obtained through the warrantless search of two vehicles[.]" Further, the box of ammunition recovered from the car is a fruit of the initial impoundment decision and inventory search.

-4-

not from Michigan, thus, did not have a place to tow the truck and the car to. Finally, Officer Wells also believed that the car may have been stolen because no one seemed to have any information on it. The car's license plate was still attached to the car and the passengers made conflicting statements regarding the car.

Based on these facts, Defendant argues that Officer Wells's decision to impound the vehicles was used as pretext and violated the state police policy on impounding vehicles. In response, the Government argues that Defendant failed to establish that he had a reasonable expectation of privacy in the truck. Further, even assuming that Defendant had a reasonable expectation of privacy in the truck, the Government contends that Officer Wells's decision to impound the truck complied with the state police policy and was objectively justifiable regardless of his subjective intent.

The first issue the undersigned must address is whether Defendant had a reasonable expectation of privacy in the truck. "'It is well-established that a defendant claiming that a search violated his Fourth Amendment rights has the burden of demonstrating that he had a legitimate expectation of privacy in the place that was searched.'" *United States v. Mastromatteo*, 538 F.3d 535, 544 (6th Cir. 2008) (quoting *United States v. Talley*, 275 F.3d 560, 563 (6th Cir. 2001)). Although the reasonable expectation of privacy requirement is grounded in the Fourth Amendment and technically differs from the concept of "standing," courts often still refer to this substantive requirement as standing. *United States v. Smith,* 263 F.3d 571, 581-82 (6th Cir. 2001) (citing *Rakas v. Illinois*, 439 U.S. 128, 139-40 (1978)). Defendant must prove his reasonable expectation of privacy by a preponderance of the evidence. *United States v. Taylor*, 496 F. Supp. 2d 852, 857 (S.D. Ohio 2006); *United States v. Jones*, 147 F. Supp. 2d 752, 756 (E.D. Mich. 2001).

When considering whether a defendant has met his burden to establish that he had a legitimate expectation of privacy in the place searched, a court must conduct a two prong analysis. *Bond v. United States*, 529 U.S. 334, 338 (2000). First, the court must determine "whether the individual, by his conduct, has exhibited an actual expectation of privacy; that is, whether he has shown that he sought to preserve something as private." *Id.* (citation and internal quotation marks omitted). Second, the court must determine whether the expectation of privacy was objectively reasonable, that is, "whether the individual's expectation of privacy is one that our society is prepared to recognize as reasonable." *Id.* "Whether a legitimate expectation of privacy exists in a particular place or item is a determination to be made on a case-by-case basis." *United States v. King*, 227 F.3d 732, 744 (6th Cir. 2000)

The Sixth Circuit has not addressed the precise scenario at issue in this case—whether an individual who borrows his girlfriend's vehicle has a reasonable expectation of privacy in that vehicle. However, courts generally find that a non-owner driver of vehicle has a reasonable expectation of privacy in the vehicle if he has permission to use the vehicle from its rightful owner. *See United States v. Garcia*, 897 F.2d 1413, 1418 (7th Cir. 1990) ("If an individual has the owner's permission to use property, society surely recognizes this as reasonable."); *United States v. Thomas*, 447 F.3d 1191, 1198 (9th Cir. 2006). ("[A] defendant may have a legitimate expectation of privacy in another's car if the defendant is in possession of the car, has the permission of the owner, holds a key to the car, and has the right and ability to exclude others, except the owner, from the car."); *United States v. Arango*, 912 F.2d 441, 445 (10th Cir. 1990) ("[T]he proponent must at least state that he gained possession from the owner or someone with the authority to grant possession."). In *United States v. Taylor*, 496 F. Supp. 2d 852, 856-57 (S.D. Ohio 2006), the district court applied this general rule and held that the non-owner driver did not have a reasonable

expectation of privacy in a vehicle because he presented no evidence regarding the owner of the vehicle.

In *United States v. Smith*, 263 F.3d 571, 583 (6th Cir. 2001), the Sixth Circuit considered a slightly different question—whether an unauthorized driver of a rental car has a reasonable expectation of privacy in the rental car. In that case, the defendant was pulled over while he was driving a rental car, and according to the rental agreement, the only authorized driver of the rental car was the defendant's wife. *Id.* at 575. Although defendant's wife was not in the car, she gave the defendant permission to drive the car. *Id.* at 586. Ultimately, the Sixth Circuit determined:

> We acknowledge that as a general rule, an unauthorized driver of a rental vehicle does not have a legitimate expectation of privacy in the vehicle, and therefore does not have standing to contest the legality of a search of the vehicle. However, we refuse to adopt a bright line test, as the government seems to advocate, based solely on whether the driver of a rental vehicle is listed on the rental agreement as an authorized driver. Such a rigid test is inappropriate, given that we must determine whether Smith had a legitimate expectation of privacy which was reasonable in light of all the surrounding circumstances. *See Rakas*, 439 U.S. at 152, 99 S.Ct. 421 (Powell, J., concurring). "In considering the reasonableness of asserted privacy expectations, the [Supreme] Court has recognized that no single factor invariably will be determinative." *Id.* We believe that the facts of this case are truly unique, and thus it is not governed by the general rule regarding unauthorized drivers of rental vehicles.

*Id.* at 586. In holding that the defendant had a reasonable expectation of privacy, the Sixth Circuit reasoned (1) he was a licensed driver; (2) he was able to present the rental agreement and provided the officer with sufficient information regarding the vehicle; (3) he was given the vehicle by his wife, who was listed on the rental agreement; (4) he had permission to drive the vehicle from an authorized driver; (5) he had a business relationship with the rental company because he had called and reserved the vehicle in his own name and was billed for renting the vehicle. *Id.* at 586-87.

Based on these factors, the Sixth Circuit concluded that the defendant had a reasonable expectation of privacy in the rental car and had standing to challenge the search. *Id.* at 587.

In this case, whether Defendant had a reasonable expectation of privacy in the truck is a close call. Defendant established that he had permission to drive the truck from his girlfriend—the truck's rightful owner. At the hearing, Defendant's girlfriend testified that she gave Defendant permission to take the truck the night before. She also testified that it was not unusual for Defendant to borrow her truck because they were in a relationship for over two years, lived together, and shared keys to different vehicles.

However, as the Sixth Circuit has noted, "no single factor invariably will be determinative." *Smith*, 263 F.3d at 586 (citing *Rakas*, 439 U.S. at 152 (Powell, J., concurring)). Here, several other factors suggest that Defendant did not have a reasonable expectation of privacy in the truck. Defendant stated during the traffic stop that (1) he only recently started driving the truck because Tungate became tired; (2) he could not consent to a search of the truck because it was not his truck; (3) he would not claim ownership of anything inside the truck; (4) he denied bringing anything inside the truck; and (5) he did not have a valid license and knew he could not legally drive. The Government maintains that Defendant abandoned any expectation of privacy by verbally disclaiming any possessory interest in the contents of the truck. *See United States v. Tolbert*, 692 F.2d 1041, 1045 (6th Cir. 2008) (holding that the defendant did not have a reasonable expectation of privacy in the contents of a suitcase because she disclaimed ownership of the suitcase); *United States v. Eden*, 190 F. App'x 416, 425 (6th Cir. 2006) (finding that the government failed to demonstrate that the defendant "exhibited a sufficient subjective intent, through her voluntary words, conduct or otherwise, to relinquish her interest in the suitcase").

Ownership of the truck is not determinative of the question of whether Defendant had a subjective expectation of privacy in the vehicle. The Court must look at the totality of the circumstances to answer the question. The undersigned finds that Defendant met his burden to establish that he had a reasonable expectation of privacy in the truck. Unlike *Smith* where the rental car company did not authorize the defendant to drive the vehicle, this case does not involve a rental car company. Instead, Defendant was an authorized driver of the truck because he had permission from the rightful owner. In addition, Defendant was in an intimate relationship with the rightful owner for two years and had used the truck on multiple occasions for work. He had his own set of keys and had complete control over the truck including the ability to exclude others. Even after he was arrested, Defendant continued to display his possessory interest in the truck by offering to call a towing service. Therefore, in the opinion of the undersigned, Defendant had a reasonable expectation of privacy.

Next, the undersigned must address whether the impoundment and inventory search complied with the Fourth Amendment. The Fourth Amendment prohibits unreasonable searches and seizures. U.S. Const. amend IV. A warrantless search is presumptively unreasonable unless a recognized exception to the warrant requirement applies. *Katz v. United States*, 389 U.S. 347, 357 (1967). The Supreme Court has recognized that a vehicle impoundment and inventory search is "a well-defined exception to the warrant requirement of the Fourth Amendment." *Colorado v. Bertine*, 479 U.S. 367, 371 (1987).

"An inventory search is the search of property lawfully seized and detained, in order to ensure that it is harmless, to secure valuable items (such as might be kept in a towed car), and to protect against false claims of loss or damage." *Whren v. United States*, 517 U.S. 806, 812 n.1 (1996)). To be a valid inventory search, the search must be conducted "according to standard

police procedures" and be "sufficiently tailored to only produce an inventory." *United States v. Jackson*, 682 F.3d 448, 455 (6th Cir. 2012) (citing *United States v. Smith*, 510 F.3d 641, 651 (6th Cir. 2007)).  Furthermore, the search must be conducted in good faith and cannot be used as a pretext for a criminal investigation.  *South Dakota v. Opperman*, 428 U.S. 364, 376 (1976).  The Government has the burden to establish that the inventory search complied with the Fourth Amendment.  *United States v. Richards*, 56 Fed. App'x. 667, 670 (6th Cir. 2003).

Here, Defendant specifically challenges Officer Wells's decision to impound the truck and the car.  Defendant alleges that Officer Wells's decision to impound violated the state police policy on impounding vehicles and was used as a pretext to search the truck.  In *United States v. Hockenberry*, 730 F.3d 645, 658-59 (6th Cir. 2013), the Sixth Circuit summarized the law regarding a police officer's decision to impound a vehicle:

> "A warrantless inventory search may only be conducted if police have lawfully tak[en] custody of a vehicle." *United States v. Smith*, 510 F.3d 641, 651 (6th Cir. 2007) (internal quotation marks omitted); *see also Jackson*, 682 F.3d at 455 ("It is settled law that the police may conduct an inventory search of an automobile that is being impounded without running afoul of the Fourth Amendment."). This Court has held that "[d]iscretion as to impoundment is permissible so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." *Jackson*, 682 F.3d at 454 (citations omitted) (internal quotation marks omitted); *see also United States v. Kimes*, 246 F.3d 800, 805 (6th Cir. 2001) ("The Fourth Amendment permits impoundment decisions . . . that are objectively justifiable . . . regardless of an officer's subjective intent."). Furthermore, an impoundment decision will not be impermissible simply because alternatives to impoundment might exist. *See Kimes*, 246 F.3d at 805 (holding that officer were not required to "take[ ] it upon themselves to call [the defendant's] wife and ask her to get the vehicle"); cf. *also United States v. Agofsky*, 20 F.3d 866, 873 (8th Cir. 1994) ("Nothing in the Fourth Amendment requires a police department to allow an arrested person to arrange for another person to pick up his car to avoid impoundment and inventory.").

-10-

Based on *Hockenberry*, it is apparent that the critical inquiry is whether Officer Wells's made the decision to impound in accordance with a standard procedure. The Michigan State Police has a standard written policy governing the impoundment of vehicles. *See* Michigan State Police, *Procedures for Removing, Reporting, and Inventorying Vehicles* (effective on January 6, 2006). There are two separate paragraphs that are relevant to this case. The first paragraph applies when the driver of the vehicle is arrested. Paragraph 1, in relevant part, provides:

> 1. VEHICLES INVOLVED IN CUSTODIAL ARRESTS
>
>    A. Release to Passenger
>
>    When the driver of a vehicle is subjected to a custodial arrest and separated from the vehicle, a properly licensed passenger shall be allowed to take custody of the vehicle (with authorization of the driver) as long as the passenger would not violate any law by doing so. This section shall not apply when the vehicle is being seized as evidence or for forfeiture.
>
>    C. Vehicles on Non-Limited Access Highways
>
>    (2) If the vehicle is parked in a way that it may create an immediate public hazard or an obstruction to traffic and immediate removal cannot be arranged, the vehicle shall be inventoried and impounded as provided in this Enclosure.

In addition to Paragraph 1, Paragraph 4 provides several scenarios in which an officer can immediately impound and remove a vehicle. Paragraph 4, in relevant part, provides:

> 4. IMPOUNDED VEHICLES
>
>    MCl 257.252d describes vehicles that may be immediately removed from public or private property at the request of this department if certain circumstances are met. For purposes of this Enclosure those vehicles defined as "Impounded" are described as follows:
>
>    A. If the vehicle is in such a condition that the continued operation of the vehicle on the highway would constitute an immediate hazard to the public.

      B. If the vehicle is parked or standing on the highway in a manner that may create an immediate public hazard or an obstruction of traffic.

      D. If there is reasonable cause to believe that the vehicle or any part of the vehicle is stolen.

Officer Wells testified that he relied on these provisions to impound the truck and the car. First, under to Paragraph 1(A), Officer Wells was required to turn over the truck and the car to a properly licensed passenger if the passenger would not violate any law. However, Officer Wells determined that Elliason could not take custody of the truck and the car because she did not appear capable of driving and she did not have her license with her. Thus, Elliason was not "a properly licensed passenger" that could take custody without violating any other law. Next, under Paragraphs 1(C)(2), 4(A), 4(B), Officer Wells was authorized to impound and remove the truck and the car because they created an immediate public hazard. At the time of the stop, it was dark and the truck and the car were parked only a few feet from a busy two-lane highway. Officer Wells acted within his discretion to call the tow truck. He knew that if he requested a tow truck, his request would become the top priority because he was a police officer. Thus, it would be the quickest way to remove the truck and the car from the highway. Finally, under Paragraph 4(D), Officer Wells was authorized to impound the truck and the car because he believed that the car was stolen. Defendant and the passengers made conflicting statements regarding the car. Moreover, the registered owner of the car was not present and no one could produce any paperwork on the car. Based on these reasons, Officer Wells acted in accordance to the standard policy and his decision to impound was not unreasonable.

It is undisputed that Officer Wells wanted to search the truck. Officer Wells was clearly suspicious—he thought the car may have been stolen and also suspected that there were

drugs or other stolen items inside the truck.  Despite testifying that he was required to impound the truck and the car, Officer Wells also conceded that this was the only vehicle that he impounded in the past year.  However, the Sixth Circuit has repeatedly stated that "the mere fact that an officer suspects that contraband may be found in a vehicle does not invalidate an otherwise proper inventory search."  *United States v. Hockenberry*, 730 F.3d 645, 659 (6th Cir. 2013) (quoting *United States v. Smith*, 510 F.3d 641, 651 (6th Cir. 2007)); *see also United States v. Tackett*, 486 F.3d 230, 232 (6th Cir. 2007); *United States v. Lumpkin*, 159 F.3d 983, 987 (6th Cir. 1998).  Although there may have been alternatives to impoundment, Officer Wells acted well within his discretion under the Michigan State Police policy.  His actions were authorized by several different provisions of the policy.  Although the evidence establishes that Officer Wells wanted to search the truck and the car, the evidence also established that he was attempting to remove two vehicles parked dangerously close to a busy two-lane highway at night as quickly as possible.

Accordingly, the undersigned finds that the decision to impound the truck was made in accordance with the standard procedure of the Michigan State Police and this decision was reasonable under the Fourth Amendment.  Therefore, the undersigned recommends that Defendant's motion to suppress (ECF No. 25) be DENIED.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within 14 days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed.R.Civ.P. 72(b); W.D. Mich. LCivR 72.3. Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir.1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:  August 2, 2017         /s/ Timothy P. Greeley
                               TIMOTHY P. GREELEY
                               UNITED STATES MAGISTRATE JUDGE